THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MIGUEL BRENES, Appellant.

First Department, July 6, 1976

*Lawrence Stern* of counsel *(Diller, Schmukler & Asness* attorneys), for appellant.

*Daniel J. Sullivan* of counsel *(Barbara Gonzo,* with him on the brief; *Mario Merola, District Attorney),* for respondent.

MURPHY, J. After receiving certain information from allegedly reliable informants, defendant became the target of a narcotics investigation in December, 1971. It was ascertained that he resided in a particular apartment in The Bronx and was also the probable tenant of another one, two floors above his actual residence. An eavesdropping warrant was obtained from a Supreme Court Justice in April, 1972, and a search warrant was obtained and executed some three weeks later. A substantial quantity of narcotics as well as cutting and packaging paraphernalia was seized. Defendant was arrested and allegedly made certain inculpatory statements. Following the denial of his motion to suppress the physical evidence seized and the admissions assertedly made, defendant pleaded guilty to attempted possession of a dangerous drug in the first degree and, pursuant to his plea bargain, was sentenced to an indeterminate term of imprisonment not exceeding seven years. Execution of the sentence has been stayed pending determination of the instant appeal involving the propriety of the orders denying the suppression motion.

The dangers and susceptibility to abuse inherent in unrestrained electronic surveillance are too well known and documented to require elaboration. Certainly in the year of our Bicentennial we should remember some of the reasons for our birth and require only the most exacting and meticulous standards before an intrusion into our precious right of individual privacy is permitted. As Justice DOUGLAS succinctly stated in his concurring opinion in *Berger v New York* (388 US 41, 64): "I also join the opinion because it condemns

electronic surveillance, for its similarity to the general warrants out of which our Revolution sprang and allows a discreet surveillance only on a showing of 'probable cause'. The safeguards are minimal if we are to live under a regime of wiretapping and other electronic surveillance."

In the instant case the People failed to establish that "normal investigative procedures" were unavailing. (CPL 700.15, subd 4.) The police officers as well as the informers gained access to the building and actually observed alleged couriers entering and exiting both apartments. A "buy" was even arranged, but could not be concluded because the police inexplicably proposed the use of a female operative, but found none that spoke Spanish. In sum, it appears from the record that "normal investigative procedures" were or could have been successful and the use of the wiretap was merely a useful additional tool. Accordingly, it should never have been authorized.

But even assuming, *arguendo,* that the wiretap warrant was lawfully issued and that the claimed technical violations of the statute (e.g., the warrant exceeded the 30-day limitation and failed to provide for termination of interception after attainment of the authorized objective, the applicant failed to establish the reliability of his informant, the return was untimely and insufficient notice thereof was given) are ignored or meritless, the suppression motion should have been granted for a more fundamental reason: the total and complete disregard of the minimization standard specified by the statute and contained in the pertinent warrant in issue.

The People concede that the electronic interception pursuant to the warrant was done entirely automatically. Though the monitoring officers themselves may have turned down the volume on their earphones when a nonpertinent call was intercepted, the electronic process of the telephone ring activated taping machines which, without human intervention or judgment, recorded each and every conversation over the defendant's telephone. These machines were never turned off during the 20 days of tapping (except, during a 14-hour period, when the ruse of an "inoperable phone" was used to permit a "repair man" to install a "bug" in the apartment). The police tapped and taped every single telephone conversation in full, including those concedely nonpertinent. Under such circumstance, I deem a mathematical computation of the number of

pertinent or nonpertinent calls to be completely irrelevant. In short, the agents completely ignored their statutory responsibility, resulting in a flagrant violation of defendant's constitutional rights.

If we are "[t]o guard against the realization of Orwellian fears" *(United States v Marion,* 535 F2d 697, 698), strict constitutional and statutory standards for the permissible use of electronic surveillance operations must be complied with.

Admittedly, there are conceptual and practical difficulties in applying the Fourth Amendment to wiretapping and other mechanical devices used for the overhearing of conversations. (See, generally, Post-Authorization Problems in The Use of Wiretaps, etc., 61 Cornell L Rev 92 *et seq.)* Nevertheless, given the amendment's applicability, all unreasonble searches and seizures are proscribed. And, in my view, nothing could be more unreasonable than the total interception and recording of all conversations over a designated telephone or at a specified location. In full recognition of the unconstitutionality of such prohibited behavior by any law enforcement official, both the Federal and the New York statutes require bona fide efforts to minimize the interception of conversations falling outside of the ambit of an authorized warrant. (See US Code, tit 18, § 2518, subd [5]; CPL 700.30, subd 7.) No such effort at minimization was even attempted here. The blatant violation of the statute by the police mandates total suppression of all monitored conversations and of the tainted fruits thereof as the only effective deterrent against such egregious misconduct. (Cf. *United States v Principie,* 531 F2d 1132.)

The judgment and the orders denying the motions to suppress should be reversed on the law and the indictment dismissed.

BIRNS, J. (concurring). There was indeed a gross failure on the part of the police to minimize the telephonic conversations they were authorized to intercept. CPL 700.35 (subd 7) directs, *inter alia,* that such police activity "shall be conducted in such a way as to minimize the interception of conversations not otherwise subject to eavesdropping".

Similar provision is to be found in Federal law. Title III of the Omnibus Crime Control and Safe Streets Act of 1968 reads: "Every order and extension thereof shall contain a provision that the authorization to intercept shall be * * * conducted in such a way as to minimize the interception of

communications not otherwise subject to interception under this statute." (US Code, tit 18, § 2518, subd [5].)

Nothing in CPL article 700 or title 18 of the United States Code, each of which is concerned with the issuance and execution of wiretap warrants provides any sanction in the event of failure to meet this statutory obligation.

It has been observed: "Whether violation of 'minimization' provisions requires * * * across-the-board suppression or whether * * * conversations that the order permitted to be seized may be admitted is a question which has divided both the federal and New York courts." *(United States v Principie, 531 F2d 1132, 1139.)*

For an excellent analysis of Federal and New York State cases on this point, see *People v Vario* (NYLJ, June —, 1976. (Filed June 14, 1976, Indictment No. 10647/72.)

In the case before us, as Justice MURPHY noted, "The People concede that the electronic interception pursuant to the warrant was done entirely automatically. Though the monitoring officers themselves may have turned down the volume on their earphones when a nonpertinent call was intercepted, the electronic process of the telephone ring activated taping machines which, without human intervention or judgment, recorded each and every conversation over the defendant's telephone. These machines were never turned off during the 20 days of tapping * * * The police tapped and taped every single telephone conversation in full, including those concededly nonpertinent."

The District Attorney seeks to justify this failure to minimize the telephone interception on the ground that the criminal activity under investigation involved many individuals and that "where conversations are in code or a foreign language, a more extensive interception of conversations is justified owing to the difficulty in determining which conversations are pertinent or non-pertinent".

The District Attorney in the case at bar was not using telephonic interception as a technique to determine whether or not a conspiracy existed in which Brenes was a party. *(United States v Sisca, 361 F Supp 735, 745, affd. on other grounds, 503 F2d 1337, cert den 419 US 1008; cf People v Vario, supra.)* The court order, which must be strictly construed, limited the law enforcement officer involved in the wiretapping procedure "to intercept any and all telephone communications of said Miguel Brenes concerning the pur-

chase, sale, possession, transfer and distribution as well as the discussion of and negotiation for the said purchase, sale, possession, transfer and distribution of dangerous drugs * * * transmitted over the said telephone line". To this extent only was Brenes' privacy to be invaded. Privacy is of constitutional dimension *(Griswold v Connecticut,* 381 US 479), and it has been urged that "minimization is a constitutional requirement". (Low, Post-Authorization Problems in the Use of Wiretaps: Minimization, Amendment, Sealing, and Inventories, 61 Cornell L Rev 92, 101.)

It is noteworthy that the State and Federal statutes each refer to the manner in which such police interception shall be "conducted". As was stated by one Federal court: "In this court's opinion the minimization requirement of § 2518(5) would be illusory if it were enforced on an item-by-item basis by means of suppressing unauthorized seizures at trial *after* the interception is a *fait accompli.* Minimization as required by the statute must be employed by the law enforcement officers *during* the wiretap, not by the court *after* the wiretap * * * Knowing that only 'innocent' calls would be suppressed, the government could intercept every conversation during the entire period of a wiretap with nothing to lose by doing so since it would use at trial only those conversations which had definite incriminating value anyway, thereby completely ignoring the minimization mandate of Title III." *(United States v Focarile,* 340 F Supp 1033, 1046-1047, affd on other grounds *sub nom. United States v Giordano,* 469 F2d 522, affd 416 US 505.)

In the case at bar there was not the slightest effort by the police to minimize the interception of conversations, as required by law. The law authorizing telephone interception does not contemplate the substitution of electronic repositories for the permanent storage of endless and irrelevant conversations of any number of persons. To protect privacy of those who might be affected by interception, the law requires the discriminating ear of human monitors.

In *Olmstead v United States* (277 US 438, 470) HOLMES, J., observed that wiretapping is "dirty business"—a characterization which is today generally acknowledged. In that same case BRANDEIS, J., observed in his famous dissent (p 476): "Moreover, the tapping of one man's telephone line involves the tapping of the telephone of every other person whom he may call or who may call him." He continued, "writs of assistance

and general warrants are but puny instruments of tyranny and oppression when compared with wire-tapping." He concluded (p 485), "Crime is contagious. If the Government becomes a law-breaker, it breeds contempt for law; it invites every man to become a law unto himself; it invites anarchy."

Crime is indeed contagious if it can spread to government activity where police disdain to follow the law. Accordingly, there is pressing need to limit the area of infection. Where the infection is widespread, judicial surgery may be required.

We must, as the Court of Appeals for the Second Circuit has stated, distinguish "between blatant violations of the statute, in which no attempt at minimization is made, and cases in which minimization is attempted, but the court concludes that the efforts were indadquate." *(United States v Principie,* 531 F2d 1132, 1140, *supra.)*

The implication is clear: Where there are blatant violations total suppression will be enforced. In the instant case the police did not bother to even attempt minimization.

In my view, total extirpation of all intercepted calls in this case is mandated.

Inasmuch as the application for the search warrant upon which the police acted in this case in arresting the defendant was predicated upon information allegedly obtained through the telephonic interception referred to herein, I am in accordance with Justice MURPHY's view requiring the reversal of the judgment of conviction and the orders denying the motions to suppress and would dismiss the indictment.

NUNEZ, J. (dissenting). The statutory requirement of CPL 700.15 (subd 4) that normal investigative procedures be first exhausted before electronic surveillance is allowed, must be reviewed in a practical and commonsense fashion. The government need not prove that normal investigative techniques will fail, but only that such techniques reasonably appear unlikely to succeed. The record supports a finding that ordinary police surveillance would have been impractical, if not impossible. Such finding provides the required factual predicate to support the wiretap. (See *United States v Armocida,* 515 F2d 29, 38; *United States v Baynes,* 400 F Supp 285, 299.) This is especially true where, as here, physical surveillance might jeopardize the investigation. (See *United States v Carubia,* 377 F Supp 1099, 1108.)

The majority believes that the taping of every call over the

defendant's telephone violates New York State (CPL 700.30, subd 7) and Federal (US Code, tit 18, § 2518, subd [5]) statutory requirements to minimize the interception of conversations falling outside the ambit of an authorized warrant. Unlike the wiretap in *United States v Principie* (531 F2d 1132) which violated the order restricting the wiretap to certain times of the day, the wiretap order herein applied to the entire day. It is clear that the police officers did not listen to the innocent calls picked up over the wiretap. While taping of all calls was automatically triggered, there is no evidence to support a conclusion that the police listened to the taped innocent calls. Accordingly, it must be the act of taping which leads the majority to determine that minimization of the wiretap was not accomplished, indeed not attempted. I disagree.

While taping of innocent calls is not to be condoned, it was not intended "that evidence directly within the ambit of a lawful order should be suppressed because the officers, while awaiting the incriminating evidence, also gathered extraneous conversations," *(United States v Cox,* 462 F2d 1293, 1301, cert den, 417 US 918.) Such a position is supported by cases in which items covered by a search warrant are not suppressed even though items not covered by the warrant are also seized. (See *United States v Sisca,* 361 F Supp 735, 746, affd on other grounds 503 F2d 1337, cert den, 419 US 1008.)

In *United States v Quintana* (508 F2d 867, 875) where the government recorded all incoming calls, the court noted the difficulty in determining which calls are innocent where a foreign langauge is used. Furthermore, in conversations of less than two minutes, taping of nonpertinent calls is permitted because the brevity prevents an adequate determination of the nature of the conversation. (See *United States v Capra,* 501 F2d 267; *People v Carter,* 81 Misc 2d 345.) In the case ar bar, the telephone conversations were in Spanish. Only two of the nine-man police investigatory team were fluent in Spanish. Many of the innocent calls were for very brief periods of time.

Under all the circumstances in this case, the minimization provisions of State and Federal statutes were not violated. Defendant has not satisfied his burden of persuasion that the evidence should be suppressed. (See *People v Di Stefano,* 38 NY2d 640.) I would affirm.

CAPOZZOLI, J., concurs with MURPHY, J.; BIRNS, J., concurs

in an opinion in which CAPOZZOLI, J., concurs; MARKEWICH, J. P., and NUNEZ, J., dissent in an opinion by NUNEZ, J.

Judgment, Supreme Court, Bronx County, rendered on June 5, 1975, and orders of said court entered on December 27, 1973 and March 12, 1975, respectively reversed, on the law, the motions to suppress evidence granted, and the indictment dismissed.