UNITED STATES of America, Appellee,

v.

Michael LILLA, Mark Lilla, Robert Lilla, Douglas Pintka, Raymond C. Colehammer, Christopher Burch, Richard Strack, Michael Bouck, Frank Benson, and Peter Santos, Appellants.

Nos. 404, 382–87, 391, 394, 461, Dockets 82–1210, 82–1212, 82–1214, 82–1216, 82–1218, 82–1220, 82–1222, 82–1224, 82–1226, 82–1260.

United States Court of Appeals, Second Circuit.

Argued Nov. 17, 1982.

Decided Jan. 27, 1983.

See also D.C., 534 F.Supp. 1247.

Stephen R. Coffey, O'Connell & Aronowitz, P.C., Albany, N.Y. (John R. Massaroni, Parisi, DeLorenzo, Gordon, Pasquariello & Weiskopf, P.C., Schenectady, N.Y., of counsel), for appellants Mark Lilla, Christopher Burch and Douglas Pintka.

John R. Massaroni, Parisi, DeLorenzo, Gordon, Pasquariello & Weiskopf, P.C., Schenectady, N.Y. (Stephen R. Coffey, O'Connell & Aronowitz, P.C., Albany, N.Y., of counsel), for appellant Robert Lilla.

John K. Sharkey, Higgins, Roberts, Beyerl & Coan, P.C., Schenectady, N.Y., for appellant Michael Bouck.

E. Stewart Jones, Jr., Troy, N.Y. (Leonard W. Krouner, Jeffrey Sherrin, Albany, N.Y., of counsel), for appellant Raymond Colehammer.

George J. Camino, Schenectady, N.Y., for appellant Michael Lilla.

Paul V. French, Albany, N.Y. (Paul E. Cheeseman, Albany, N.Y., on the brief, Thomas P. O'Sullivan, Albany, N.Y., of counsel), for appellant Strack.

Jerome K. Frost, Troy, N.Y., for appellants Benson and Santos.

George Yanthis, Asst. U.S. Atty., Albany, N.Y. (Frederick J. Scullin, Jr., U.S. Atty., N.D.N.Y., Albany, N.Y., on the brief), for appellee.

Before FEINBERG, Chief Judge, OAKES, Circuit Judge, and BONSAL,* District Judge.

* Of the United States District Court for the Southern District of New York, sitting by designation.

1. The defendants' motion to suppress evidence seized as a result of the eavesdropping warrants and extensions was denied by the United States District Court for the Northern District of New York, Howard G. Munson, Chief Judge. *United States v. Lilla,* 534 F.Supp. 1247 (N.D.N.Y.1982). The defendants then entered various guilty pleas before Judge Miner, but reserved their rights to appeal from Chief Judge Munson's order. Defendants Mark and Robert Lilla received sentences of six years and fines of $10,000 for conspiring to violate 21 U.S.C. § 841(a)(1) (possession with intent to distribute

OAKES, Circuit Judge:

This appeal presents the issue whether the affidavit of a New York state trooper applying for an eavesdropping warrant provided sufficient information that normal investigative procedures reasonably appeared unlikely to succeed if tried. We hold that the affidavit was insufficient under both N.Y.Crim.Proc.Law §§ 700.15(4) and 700.-20(2), (3), as well as 18 U.S.C. § 2518(1)(c), and, with one exception, reverse the appellants' convictions, based on guilty pleas with reservations of rights for certain drug offenses,[1] by the United States District Court for the Northern District of New York, Roger J. Miner, Judge.

## I. *BACKGROUND*

The affidavit in question in this case was sworn out by Kenneth T. Cook, a state trooper whose assignment at the time involved investigation of persons engaged in the sale and criminal possession of marijuana and other controlled substances in the Loudonville, New York area. *See* N.Y.Penal Law §§ 105.00, 110.00, 220.00, 221.00 (McKinney 1975, 1980, and Supp. 1982–83). The affidavit revealed that in April, 1980, Cook was told by an informant that Michael Lilla was selling cocaine and marijuana; the informant indicated that arrangements to purchase drugs could be made by phone. On April 10, 1980, Trooper Cook listened in on an extension while the informant spoke with Lilla at Unified Auto and Equipment Inc., Lilla's place of work. In response to the informant's inquiry as to the "flake

a controlled substance); defendants Raymond Colehammer, Richard Strack, Douglas Pintka, Christopher Burch, Frank Benson, Peter Santos, and Michael Bouck pleaded guilty to violations of 21 U.S.C. § 843(b) (use of communication facility to commit or aid in the commission of a crime under Chapter 13 of Title 21). All of the defendants except Bouck received prison sentences and fines for the § 843(b) violations. Michael Lilla pleaded guilty to a charge of violating 21 U.S.C. § 841(a)(1) (possession with intent to distribute a controlled substance) based on his sale of marijuana to a state trooper posing as a drug purchaser and received a one year and one day sentence and a $2,000 fine.

situation," Lilla said that. "somebody's going to bring some up in a week or two." When asked how the "lumbo" was, Lilla replied, "It's not that great," but further conversation was to the effect that Lilla would sell "a whole one" for $475.

According to the affidavit, the trooper then accompanied the informant to the Schenectady garage occupied by Unified Auto and Equipment, was introduced to Michael Lilla, and paid him $475 for a pound of "weed" or marijuana. The trooper then discussed purchasing cocaine, and Lilla said that his brother was in Florida making arrangements to bring "coke" and "grass" to Schenectady that would be available in a week or two. Lilla then gave the trooper both his home and work telephone numbers. Analysis conducted by the State Police laboratory confirmed that the pound of "weed" was marijuana. The trooper's affidavit pointed out that he had attended a two-week seminar on narcotics sponsored by the Federal Drug Enforcement Administration and some drug seminars at the New York State Police Academy and that he had worked as an undercover officer and in his experience the word "flake" was used to refer to cocaine and "lumbo" and "weed" to marijuana.

Rather surprisingly, the affidavit then goes on to state:

> I am able to conclude that this investigation involving the illicit trafficking in the sale and distribution of controlled substances involves other unknown co-conspirators and that no other investigative method exists to determine the identity of these other persons involved and of obtaining legally sufficient evidence of their guilt except by wiretapping. I can further state that it is the common practice of persons engaged in narcotics trafficking to conduct their business on the telephone only with persons known to them and that they purposely use the telephone at irregular hours, day and night.

The final paragraph of the affidavit stated:

> Although probable cause exists from the facts set forth above to support the issuance of Arrest and/or Search Warrants, such action at this time would preclude the obtaining of the seizure of the operation and other persons involved, a factor in the grade of crime being committed. Since from my police experience and training in such investigations, I am able to conclude that an operation such as set forth above, must involve others and that an arrest and or search at this time would not stop the whole conspiracy operation, but only move it to continue elsewhere, requiring new leads and information, which might not be so readily available and no other investigative procedures exist to determine the identity of other persons participating and conspiring and of obtaining legally sufficient evidence of the guilt, except by wiretapping.

On the basis of this affidavit, Judge Dominick J. Viscardi, Supreme Court, Schenectady County, issued an eavesdropping warrant authorizing the wiretapping of Lilla's home and work phone numbers. An extension of this original warrant was obtained, as well as another warrant dated May 8, 1980, in Saratoga County by a trooper assigned to the same unit as Trooper Cook, on the basis of telephone conversations intercepted under the April 23, 1980, warrant issued by Judge Viscardi.

## II. DISCUSSION

### A. The Cook Affidavit

The May 8 warrant was granted on the strength of drug related conversations intercepted under the April 23 warrant. Thus, there is no doubt that if the April 23 warrant falls, so does the May 8 warrant. Chief Judge Munson upheld the earlier warrant against the defendants' challenge that the supporting affidavit failed to demonstrate that other investigative procedures had been used or were unlikely to succeed if tried, stating that "marginally sufficient facts were presented to justify a reasonable belief that normal investigative measures would be unavailing." *United States v. Lilla,* 534 F.Supp. 1247, 1260 (N.D.N.Y.1982). In reaching this conclusion, Judge Munson

stated that common sense would suggest that Michael Lilla's operation involved several individuals, one of whom was in Florida supplying Lilla's brother with cocaine. While we agree with this observation, we do not think that it follows that the statutory requirement of exhausting other investigative procedures was complied with, or even said to have been complied with.

Judge Munson held that the validity of the warrant must be measured by New York law. For practical purposes the federal and New York statutory requirements are the same.[2] Both require a showing that investigative procedures less intrusive than a wiretap have been tried or are unlikely to succeed if tried. We have previously cited the parallel provisions together, *e.g., United States v. Fury,* 554 F.2d 522, 529 n. 6 (2d Cir.1977), *cert. denied,* 436 U.S. 931, 98 S.Ct. 2831, 56 L.Ed.2d 776 (1978), and cited alternatively federal and state cases. *Id.* at 530. New York's highest court has held that the New York statute was designed to harmonize " 'state standards for court authorized eavesdropping warrants with federal standards,' " *People v. McGrath,* 46 N.Y.2d 12, 26, 385 N.E.2d 541, 547, 412 N.Y.S.2d 801, 807 (1978) (*quoting* Governor's Memorandum, L. 1969, ch. 1147, N.Y.Legis.Ann. 586 (1969)), and we discern no difference between the federal and state case law relating to this requirement.[3]

The Supreme Court has told us that the requirement is "simply designed to assure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime," *United States v. Kahn,* 415 U.S. 143, 153 n. 12, 94 S.Ct. 977, 983 n. 12, 39 L.Ed.2d 225 (1974), and while traditional surveillance techniques need not be exhausted first if they are "impractical" or costly and inconvenient, *United States v. Robertson,* 504 F.2d 289, 293 (5th Cir.1974), *cert. denied,* 421 U.S. 913, 95 S.Ct. 1568, 43 L.Ed.2d 778 (1975), nevertheless Congress—and, we may add, the New York legislature—

evinced the clear intent to make doubly sure that the statutory authority be used with restraint .... These [wiretap] procedures were not to be routinely employed as the initial step in criminal in-

---

**2.** 18 U.S.C. § 2518 (1976 & Supp. V 1981) provides that:

(1) Each application for an order authorizing or approving the interception of a wire or oral communication under this chapter shall be made in writing upon oath or affirmation to a judge of competent jurisdiction and shall state the applicant's authority to make such application. Each application shall include the following information:

....

(c) a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous....

N.Y.Crim.Proc.Law § 700.15 (McKinney 1971) provides that:

An eavesdropping warrant may issue only:

1. Upon an appropriate application made in conformity with this article; and

....

4. Upon a showing that normal investigative procedures have been tried and have failed, or reasonably appear to be unlikely to succeed if tried, or to be too dangerous to employ....

N.Y.Crim.Proc.Law § 700.20 (McKinney 1971) provides that:

1. An ex parte application for an eavesdropping warrant must be made to a justice

in writing, and must be subscribed and sworn to by an applicant.

2. The application must contain:

....

(d) A full and complete statement of facts establishing that normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous to employ, to obtain the evidence sought....

**3.** We held in *United States v. Sotomayor,* 592 F.2d 1219, 1225 (2d Cir.), *cert. denied,* 442 U.S. 919, 99 S.Ct. 2842, 61 L.Ed.2d 286 (1979), that failure to comply with state statutory requirements would not preclude admissibility in a federal proceeding if the requirements, like those governing sealing, are "essentially evidentiary in character." *Sotomayor* suggested, however, that more stringent state requirements would control if they were designed to protect an individual's right of privacy. *Id.* The requirement at issue here is obviously designed to protect privacy. Thus, if the New York statute held state authorities to a higher standard of "exhaustion" than the federal statute, *Sotomayor* would suggest that the validity of the wiretap warrant must be measured with reference to state law.

vestigation. Rather, the applicant must state and the court must find that normal investigative procedures have been tried and failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous. *United States v. Giordano,* 416 U.S. 505, 515, 94 S.Ct. 1820, 1826, 40 L.Ed.2d 341 (1974). To this end, both the New York and the federal statute require a "full and complete statement" explaining whether other investigative procedures have been tried and have failed, or appear "unlikely to succeed" or are "too dangerous." Although the required showing is to "be tested in a practical and commonsense fashion," S.Rep. No. 1097, 90th Cong., 2d Sess. 101, *reprinted in* 1968 U.S.Code Cong. & Ad.News 2112, 2190; *People v. Versace,* 73 A.D.2d 304, 307, 426 N.Y.S.2d 61, 64 (App.Div.1980), an affidavit offered in support of a wiretap warrant must provide some basis for concluding that less intrusive investigative procedures are not feasible.

Previous cases from our own court show the care taken, even when wiretap warrants have been upheld, to ensure that normal investigative procedures have been tried or at least considered. For example, in *United States v. Hinton,* 543 F.2d 1002 (2d Cir.), *cert. denied,* 429 U.S. 980, 97 S.Ct. 493, 50 L.Ed.2d 589 (1976), a case involving a major New York City drug conspiracy, ongoing nonwiretap surveillance had indicated that one of the defendants was likely involved in an expansive narcotics operation.[4] The issuance of a wiretap warrant was upheld on the ground that "normal investigative techniques had become increasingly unsuccessful." *Id.* at 1011. Similarly, in *United States v. Fury,* 554 F.2d at 530, the supporting affidavit set forth that on thirteen specific dates normal investigative techniques had been attempted but the subjects were "difficult to 'tail' because they were 'very careful and ... constantly changing routes.'" *United States v. Vazquez,* 605 F.2d 1269 (2d Cir.), *cert. denied,* 444 U.S. 981, 100 S.Ct. 484, 62 L.Ed.2d 408 (1979), which involved a New Jersey statutory provision virtually identical to the New York and the federal provisions, illustrates the sort of investigative procedures that might be utilized before resorting to wiretapping.[5] In *Vazquez* the prosecutor's office had interviewed informants, had conducted physical surveillance, and had checked bank, telephone, motor vehicle, utility, and police records. *Id.* at 1282. Finally, in *United States v. Martino,* 664 F.2d 860, 868 (2d Cir.1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 2020, 72 L.Ed.2d 474 (U.S. 1982), the affidavit described attempts to have a confidential informant introduce an undercover agent to the defendant in hopes that the agent might ferret out the identity of his sources, but the defendant spurned the agent and demanded that he leave the vicinity. As in *Fury,* attempts to "tail" the defendant proved futile.

The New York cases are quite to the same effect. Thus, where the location of the subjects of the investigation precludes the use of informants or nonwiretap surveillance, *see People v. Penna,* 53 A.D.2d 941, 942, 385 N.Y.S.2d 400, 402 (App.Div. 1976) (isolated dwelling in extremely rural setting), wiretap warrants have been upheld. Wiretaps have also been approved where the police have attempted and failed to infiltrate a criminal conspiracy involving

---

4. Simple surveillance of the apartment used in the *Hinton* case revealed that several individuals later named as defendants were observed "frequently entering and leaving" an apartment used as a drug mill "carrying paper bags, attache cases, and suitcases." 543 F.2d 1002, 1006 (2d Cir.), *cert. denied,* 429 U.S. 980, 97 S.Ct. 493, 50 L.Ed.2d 589 (1976). It was only after surveillance efforts fanned outward to encompass the movements of the defendants and their accomplices that a wiretap warrant was approved. In this case there was apparently no surveillance of Lilla's workplace or residence after the initial marijuana buy.

5. The legislative history suggests that "[n]ormal investigative procedure would include, for example, standard visual or aural surveillance ... general questioning or interrogation under an immunity grant, use of regular search warrants, and the infiltration of conspiratorial groups by undercover agents or informants." S.Rep. No. 1097, 90th Cong., 2d Sess. 101, *reprinted in* 1968 U.S.Code Cong. & Ad.News 2112, 2190.

individuals with prior records who were "careful and evasive" following the unsuccessful use of search warrants, *People v. Versace,* 73 A.D.2d at 308, 426 N.Y.S.2d at 64, and where the nature of the offense is such that only electronic surveillance can produce the evidence necessary for conviction. *See People v. Teicher,* 52 N.Y.2d 638, 655–56, 422 N.E.2d 506, 515, 439 N.Y.S.2d 846, 855 (1981) (videoelectronic surveillance of dentist suspected of sexually abusing female patients while they were heavily sedated upheld). Wiretap warrants have been invalidated, however, where the record indicated that other procedures might have been used successfully. For example, in *People v. Brenes,* 53 A.D.2d 78, 80, 385 N.Y.S.2d 530, 531–32 (App.Div.1976), *aff'd,* 42 N.Y.2d 41, 364 N.E.2d 1322, 396 N.Y.S.2d 629 (1977), it was held that the State failed to establish that normal investigative procedures were unavailing where, as here, informers and undercover operatives had access to the building and were able to observe the comings and goings of suspected couriers. In contrast to those New York cases and cases from our own court where wiretap warrants have been upheld, in this case, as in *Brenes,* the "use of the wiretap was merely a useful additional tool" and therefore "should never have been authorized." 53 A.D.2d at 80, 385 N.Y.S.2d at 532.

■ Neither the New York nor the federal statute requires that any particular investigative procedures be exhausted before a wiretap may be authorized. Wiretaps are "neither a routine initial step nor an absolute last resort." Note, *The United States Courts of Appeals: 1975–76 Term Criminal Law and Procedure,* 65 Geo.L.J. 209, 247 (1976). The requirement of a "full and complete statement" regarding procedures attempted or considered prior to the application for a wiretap serves both to underscore the desirability of using less intrusive procedures and to provide courts with some indication of whether any efforts were made to avoid needless invasion of privacy. Like other courts, we reject generalized and conclusory statements that other investigative procedures would prove unsuccessful. *United States v. DiMuro,* 540 F.2d 503, 510–11 (1st Cir.1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 733, 50 L.Ed.2d 749 (1977); *United States v. Feldman,* 535 F.2d 1175, 1178–79 (9th Cir.), *cert. denied,* 429 U.S. 940, 97 S.Ct. 354, 50 L.Ed.2d 309 (1976); *United States v. Vento,* 533 F.2d 838, 849–50 (3d Cir.1976); *United States v. Kalustian,* 529 F.2d 585, 589–90 (9th Cir. 1975); *see also United States v. Williams,* 188 U.S.App.D.C. 315, 580 F.2d 578, 589, *cert. denied,* 439 U.S. 832, 99 S.Ct. 112, 58 L.Ed.2d 127 (1978) (affiant's conclusion as to the need for wiretap upheld when read in conjunction with other portion of affidavit containing "detailed descriptions of the investigative events" attempted prior to wiretap request).

■ The record in this case does not support the conclusion that other investigative procedures were either unlikely to succeed or were too dangerous to use. If anything, the record establishes the contrary proposition: the normal investigative procedures that *were* used were successful. Trooper Cook was able, through his informant, to "make a buy" from Michael Lilla and was told that Lilla's brother was in Florida working on a cocaine and marijuana deal. Lilla was apparently not apprehensive about dealing with Cook; he told Cook to call a week or so after the initial marijuana purchase to check on the status of the cocaine and marijuana that was to be sent up from Florida. Yet the affidavit does not reveal what, if any, investigative techniques were attempted prior to the wiretap request. Instead, the affidavit merely asserted that "no other investigative method exists to determine the identity" of individuals who might have been involved with Lilla. The affidavit fails to specify the facts upon which Cook based this conclusion; there is no indication why simple surveillance of Lilla's place of work or his home would not have been useful. The affidavit does not enlighten us as to why this narcotics case presented problems different from any other small-time narcotics case; if anything, Lilla operated more openly than most and with less care in terms of evading detection. In short, we agree with

counsel at argument who stated that the only useful purpose that might be served by the trooper's affidavit in this case is as an exhibit at a police training academy of how *not* to conform to the federal and state statutory requirements.

The Government argues that physical surveillance of the auto body shop where Lilla worked would have been unavailing because legitimate customers as well as drug purchasers would come to call. But the drug-related customers at the auto body shop would presumably have no interaction with the shop concerning their cars, a matter that might have been easily detected by simple surveillance of those who visit the shop or through examination of the shop's business records. The Government's argument that this was a "far flung ... conspiracy involving numerous unknown persons" whose identity could be discovered only through wiretapping simply does not square with common sense.[6] We see no reason why surveillance of Michael Lilla or the use of informants could not have yielded this information. The affidavit supporting the application for the wiretap does nothing to allay our fears that the State in this case relied on wiretapping as a substitute for standard investigative procedures, a result that both the New York and the federal statutes are designed to avoid.[7] The statutory requirements are not so lightly to be regarded.

### B. *Michael Lilla's Conviction*

██ Lilla, who sold Trooper Cook a pound of marijuana before the April 23 warrant was issued, argues on appeal that Judge Munson erred in denying a pretrial request for disclosure of, inter alia, the identity of Trooper Cook's informant. We find no error in this ruling. The defendant bears the burden of establishing the need for disclosure, *see Socialist Workers Party v. Attorney General*, 565 F.2d 19, 23 (2d Cir.1977), *cert. denied*, 436 U.S. 962, 98 S.Ct. 3082, 57 L.Ed.2d 1129 (1978), and this requires some demonstration that in the absence of such disclosure the defendant will be denied a fair trial. *See Roviaro v. United States*, 353 U.S. 53, 60–61, 77 S.Ct. 623, 627–28, 1 L.Ed.2d 639 (1957). Whether disclosure is appropriate is a matter left in the first instance to the district court's discretion. *See, e.g., United States v. Turbide*, 558 F.2d 1053, 1060–61 (2d Cir.), *cert. denied*, 434 U.S. 934, 98 S.Ct. 421, 54 L.Ed.2d 293 (1977); *United States v. Soles*, 482 F.2d 105, 108–09 (2d Cir.), *cert. denied*, 414 U.S. 1027, 94 S.Ct. 455, 38 L.Ed.2d 319 (1973). Lilla made no showing to the trial court—and presents no argument on appeal—suggesting that denial of the disclosure request impaired his ability to prepare a defense. We note that Judge Munson did conduct an in camera review of government materials relating to the informant, an approach we have approved in the past as a "highly appropriate and useful means of dealing with claims of governmental privilege."

---

**6.** The individuals involved in this conspiracy, "far flung" or otherwise, would obviously remain "unknown" until some sort of investigative efforts were attempted. This case appeared to involve a relatively small number of individuals dealing with Michael Lilla and perhaps with each other; ultimately, drugs and money were exchanged in transactions that might have been observed through simple surveillance. If the crimes in question were planned and consummated only by means of telephone, e.g., if Lilla used the phone as a broker to bring together other buyers and sellers with whom he never had any other contact, the argument that wiretapping was the only option might seem more persuasive. But even in this unlikely case, pen registers would be less intrusive than wiretapping. *See Smith v. Maryland*, 442 U.S. 735, 745–46, 99 S.Ct. 2577,

2582–83, 61 L.Ed.2d 220 (1979) (no warrant required for installation of pen register).

**7.** The government seems to argue that wiretapping is appropriate because drug dealers often use the telephone at "irregular" or "unusual" hours. But this observation is germane to most forms of criminal activity that involve more than one willing participant and require some degree of planning. Without question, it would be in some sense more efficient to wiretap whenever a telephone was used to facilitate the commission of a crime. But the statutory requirement that other investigative procedures be exhausted before wiretapping reflects a congressional judgment that the cost of such efficiency in terms of privacy interests is too high. *See United States v. Kalustian*, 529 F.2d 585, 589 (9th Cir.1975).

*Socialist Workers Party,* 565 F.2d at 23, quoting *Kerr v. United States District Court,* 426 U.S. 394, 406, 96 S.Ct. 2119, 2125, 48 L.Ed.2d 725 (1976). Lilla's final claim—that his sentence of one year and one day is excessive—is without merit.

Judgment reversed in part, affirmed in part.