### UNITED STATES of America

v.

### Kerwin BLOUNT.

### No. 3:97cr00232(EBB).

United States District Court,
D. Connecticut.

Dec. 29, 1998.

John H. Durham, Peter D. Markle, H. Gordon Hall, U.S. Attorney's Office, New Haven, CT, for Plaintiff.

Sarah C. Schnell, Federal Public Defender's Office, New Haven, CT, for Defendant.

## ORDER RE MOTION TO SUPPRESS ELECTRONIC SURVEILLANCE EVIDENCE

DORSEY, District Judge.

The pending motion has been referred to the undersigned to permit review of the challenged authorization for electronic surveillance by other than the Judge who authorized it.

## I. ISSUE PRESENTED:

Defendant Blount is charged with conspiracy to possess cocaine with intent to distribute in violation of 21 U.S.C. §§ 846, 841(a)(1). Named also as members of the conspiracy are Lloyd Streater, John Watley, Charles Wooten, Torrance Lee and Joseph Pollard, who were named in the application which noted others also being involved but then unknown. Named in the indictment, but not named in the application, are Troy Streater, Louis Love, Charles Fluitt, Ernest Newton, Felicia Best and Todd Reynolds. Named in the application but not indicted are Lisa Craggett and William Knox.

In the course of investigating the activities of the alleged conspirators, the government applied, on October 17, 1997, for authorization to place taps on two telephones and three pagers. The purpose was to obtain evidence as to conversations and/or telephone calls which could be used to prove, beyond reasonable doubt, conspirators' violation of the law in transactions involving drug distribution. The factual bases for such authorization, required by the authorizing statutes, 18 U.S.C. §§ 2510–2522 (Title III), are not challenged except for one. Movant contends that there was no basis to find the taps were necessary due to the unavailability of other means by which evidence of the recited violations could be obtained. The record on which the application was based is claimed to have adequately demonstrated the violation. Thus the validity of the taps is challenged because the evidence developed prior to October 17, 1997, adequately demonstrated the violation cited and sufficiency of investigative techniques which had been used. The motion seeks suppression of all evidence derived from the wiretaps, but is thus excessively broad. It will only be considered as to evidence that pertains to movant. Beyond that he has no standing.

## II. FACTS:

The subscribers of the two telephone numbers were Elm City Seafood, a store (203–785–1885), and Emalie Blount, a residence (203–468–7422). The pagers pertained to 203–477–1700 (John Diamond, subscriber), 860–360–9343 (subscriber and billing address unknown), and 203–867–0583 (Troy Moore, subscriber). The government, while not conceding that defendant has standing to challenge the taps as a subscriber, which he was not, does not dispute his standing as an aggrieved person, see 18 U.S.C. § 2510(10)(a) and (11).

In support of the application, the government submitted the affidavit of an FBI agent involved in the investigation. Therein is recited information developed in the investigation to establish the requisite probable cause, which of necessity asserted facts probative of

the involvement of several persons, including Mr. Blount, in the unlawful activity. As flagged by movant, and not contested by the government, the record reflected evidence from seven confidential informants, other taps, and surveillance which included monitoring of controlled drug buys and seemingly resulted in the acquisition of tangible evidence of drug transactions causing several members' arrests on drug charges. A pen register reflected substantial communication among the pagers and telephones for which taps were sought and telephones of others associated with the conspiracy. It further reflected existence of a conspiracy, its organization, its members and their roles, the methods by which drugs were obtained in New York, brought to Connecticut, processed and distributed retail and wholesale, and conspirators' activities, including that of Mr. Blount, furthering the conspiracy.

## III. DISCUSSION:

Establishment of statutory conditions precedent is a sine qua non to lawful electronic interception. *United States v. Giordano*, 416 U.S. 505, 515, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974). This included demonstration that "normal investigative procedures have been tried and failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." *Id.* Suppression is required if any of the statutory requirements are not satisfied. *Id.* at 527, 94 S.Ct. 1820. See § 2518(1)(c); *United States v. Kahn*, 415 U.S. 143, 153, 94 S.Ct. 977, 39 L.Ed.2d 225 (1974).

Movant here asserts that the use of usual investigative techniques were not shown to have failed but rather had succeeded, citing *United States v. Lilla*, 699 F.2d 99, 104 (2d Cir.1983). Thus Blount argues that "law enforcement authorities had been able to gather much incriminating information on Streator, as well as members of his organization." Movant's Memorandum of October 13, 1998, at 7–8. Buys from him were recorded on five occasions. Movant distinguishes decisions of the Second Circuit where a necessity for additional, otherwise unavailable, evidence was shown in *United States v. Miller*, 116 F.3d 641 (2d Cir.1997), *United States v.*

*Torres*, 901 F.2d 205 (2d Cir.1990), and *United States v. Young*, 822 F.2d 1234 (2d. Cir. 1987). Movant almost seems to argue that there is no ability to contest the available evidence at trial. Yet he stops short of waiving his right to put the government to its burden of proof of the charges against him beyond a reasonable doubt.

The government notes the limitations of physical surveillance, Blount's awareness and avoidance of surveillance and the inability of informants to identify all members of the conspiracy and their respective roles. The application flags unknown conspirators and the fact that movant was not the only target of the investigation. Of the five telephones/pagers targeted, only one, in the name of Emalie Blount, has any apparent immediate connection to movant who, however, has a different address. Two pagers are noted as used by others than movant. All the telephones and pagers would have been useful in developing information about other than movant, including defendants unknown at the time but since indicted.

The purposes of the taps were noted in the application to be:

1) Identification of the nature, places, extent and methods of known and unknown violators drug trafficking.

2) Identification of accomplices, aiders, abettors and co-conspirators and their roles.

3) Discovery of location of drugs and drug proceeds.

4) Discovery of location of trafficking records.

5) Discovery of financing resources for the trafficking.

6) Location of items used to further the conspiracy.

Application affidavit at 7–8.

Further the taps were described as developing admissible evidence to prove present and future trafficking. *Id.*

At the application, information as to movant was that he moved cocaine from New York to Connecticut, usually on Thursdays, Fridays or Saturdays, by train or car, often accompanied by a mule who carried one or two kilograms of cocaine. Movant had pro-

vided protection for the conspiracy. He conducted drug transactions for Lloyd Streater in the latter's place of business. A residence was 41 Oak Ridge Drive, Second Floor Left Apartment, New Haven. His role was a supervisor for Lloyd Streator, go-between with street dealers. He sold user levels of cocaine to informants four times in 1996 and in 1997. He was observed making what appeared to be deliveries to street dealers once in 1997. He set up street dealers at the conspiracy "corner" and collected shift proceeds. He used a pager to coordinate street dealers' supply of retail drug packages. He engaged in drug related unrecorded telephone conversations.

Physical surveillance is noted by the government to have significant evidentiary limitations. It can confirm a meeting, but not necessarily identify all participants. It can even suggest what may have taken place, but it does not eliminate the possibility of the occurrence of lawful social or economic intercourse between or among the participants. It does not record the words spoken nor can it eliminate lawful exchange of items, nor lawful receipt of money. It cannot be performed in all locations and is susceptible to detection when protracted. It is subject to counter-surveillance and vulnerable when strangers to a location tarry long or appear repeatedly. Fixed surveillance is subject to dealers' mobility. The principal location targeted by the investigation here is subject to limitations on vehicular and pedestrian traffic and unobtrusive parking. Not all surveillance agents have the ability to blend into a scene surrounding a target location. Moving car or pedestrian surveillance is subject to obstruction from other vehicles and/or pedestrians which targets readily use to shake, or detect, agents.

Grand jury subpoenas and search warrants alert targets to the investigation and prompt evasive tactics or suspension of activity. Refusal of truthful testimony and/or Fifth amendment claims thwart extraction of information from knowledgeable witnesses for which immunization does not assure success. Informants are usually restricted to the periphery of multi-step drug distribution and cannot reliably provide hard evidence of involvement, continuity and activity of the higher echelons of the organization. Undercover agents are difficult to insinuate into close-knit organizations. Pen registers and phone toll records do not disclose conversation.

The government is obliged to meet a clearly stated burden of proof to achieve movant's conviction. It cannot know what evidence will be necessary to convince a jury to find the elements of any offense charged to movant proven beyond a reasonable doubt. Thus it must provide a sufficient margin of evidence to insure against a jury's refusal to credit all of the evidence offered or to draw all the inferences claimed to support a finding of guilt. In addition, it must hedge against the frailty of witnesses' recollections and credibility as well as the possible exclusion of evidence in the face of admissibility objections. Thus it cannot be said that the government should be stopped from gathering evidence when it might be said to have enough for probable cause or even to constitute proof beyond a reasonable doubt. A court's assessment of such would not be determinative of a finding of guilt. To permit movant to cut off further government evidence acquisition through electronic surveillance on the basis of adequacy of what it has gathered before seeking wiretap authorization would hobble the government.

The purpose of §§ 2518(1)(c) and (3)(c) is not to introduce an artificial ceiling to the evidence the government may accumulate to be able to prove its case while allowing defendant to argue the inadequacy of the government's case at trial. Those sections are construed to preclude electronic surveillance if the evidence asserted to be sought through such means is relevant but otherwise obtainable by reasonably available alternative means. The test is not the sufficiency of the evidence developed or developable by other means. The test is whether the evidence to be obtained from the wiretap(s) is relevant, i.e. probative of a target's guilt, and unobtainable by other reasonably available lawful means. *United States v. Kahn*, 415 U.S. 143, 153 n. 12, 94 S.Ct. 977, 39 L.Ed.2d 225 (1974). Where telephones are used to violate the law, they are a potential source of evidence not otherwise reasonably available

and properly tapped. *United States v. Young,* 822 F.2d 1234, 1237 (2d Cir.1987); *United States v. Steinberg,* 525 F.2d 1126 (2d Cir., 1975). That evidence can tie otherwise disjointed evidence into convincing proof of conspiracy.

The government argues that the support for the application demonstrates the existence of relevant evidence to be obtained from the wiretaps sought and the inability to obtain same reliably by all alternative means. That includes physical surveillance, grand jury appearances or production, target interviews, search warrants, pen registers, telephone toll records, informants and undercover agents, and taping of conversations of imprisoned suspects.

The charge here includes conspiracy involving several persons in addition to movant. The complexity of proof of the guilt of all so charged obliges the government to produce evidence well beyond that required to convict movant. It includes knowing activity of each conspirator in an aspect of drug distribution in conjunction with one or more other conspirators. Further the requirements of the sentencing guidelines require proof of the narcotics quantity known or foreseeable as involved and within the scope of each conspirator's agreement in joining the conspiracy. *United States v. Hernandez–Santiago,* 92 F.3d 97, 100 (2d. Cir.1996).

The government claims, and the agent's affidavit, demonstrate that the ability to demonstrate the structure and membership of the conspiracy generally, but not in definitive conduct, by all the members, except in limited street sales, was not as broad as the intended harvest of evidence from the requested wiretaps. That information was defined in the affidavit and application as noted above. See Government Memorandum at 11.

Movant's argument substantially relies on *United States v. Lilla,* 699 F.2d 99 (2d. Cir. 1983), a case quite different factually from the case at hand. In *Lilla,* the affiant overheard one telephone conversation with defendant in which sale/purchase of marijuana was discussed and a subsequent purchase thereof by him from defendant. The affidavit ruled out other means of identifying others involved in the distribution. The appellate court's decision focused on the required

showing of exhaustion of other investigative procedures before resort to wiretaps would be lawful. *Id.* at 102. Thus other less intrusive methods must be evaluated from a practical and common sense viewpoint, and though not necessarily required to be exhausted, must be shown not to be feasible, to have been tried and failed or at least considered, unlikely to succeed or dangerous. *Id.* at 102–103. The wiretap application was held to have failed to demonstrate that it was unlikely that other methods would succeed or be dangerous. It did note that the only investigation recited had been successful. *Id.* at 104. That observation does not support movant's claim that the court was thereby imposing a sufficiency test to cut off further investigation using a wiretap. The court merely held that the record on which the application was considered was insufficient. Clearly a record which met the statutory standard would not have precluded authorization of a wiretap on the basis that the investigation had developed sufficient evidence. What must be avoided is the substitution of wiretaps for other available, less intrusive, standard means of investigation.

Movant's reliance on *United States v. Giordano,* 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974) is also misplaced. In that case, the dispositive issue was the validity of an approval of an application for a wiretap by other than the Attorney General. *Id.* at 512, 94 S.Ct. 1820.

 The determination of the issuing judge as to the propriety of a wiretap is entitled to deference. *United States v. Ruggiero,* 726 F.2d 913, 924 (2d. Cir.), *cert. den.,* 469 U.S. 831, 105 S.Ct. 118, 83 L.Ed.2d 60 (1984). The record presented at that time reflects the investigation's use of eight methods which demonstrated the existence of probable cause for the wiretaps requested. It also reflected the need for additional information to tie conclusively into the conspiracy not only those targeted by and named in the application, but others then unidentified. Those added purposes buttressed the government's claim that though successful to a degree, the methods used had not entirely succeeded. The duration of the investigation, one year and nearly eleven months to the date of the application, posed the risk of staleness of some of the evidence of conspira-

torial activity and further justified resort to the requested wiretaps.

In assessing the further use of the methods employed it is noted that the evidence developed as of the application date is likely to be attacked by the movant. Informants will be derided, their motives probed, their credibility questioned. Surveillance will be argued to be less than definitive or probative. Pen registers and toll records do not identify the parties to calls nor the subjects discussed. Evidence of consummated street sales has limited import in proving the overall function of the conspiracy and the roles and furtherance by all conspirators. The methods used were satisfactorily shown to have run their course of effectiveness so as to have permitted taps in accordance with the preconditions of §§ 2518(1)(c) and (3)(c).

IV. CONCLUSION:

Accordingly defendant Blount's motion to suppress, doc. # 247, is denied.

SO ORDERED.