**UNITED STATES of America,**

v.

**Matthew NIX and Earl McCoy, Defendants.**

**6:14–CR–06181 EAW**

United States District Court, W.D. New York.

Signed 08/21/2017

---

Robert Marangola, Everardo A. Rodriguez, U.S. Attorney's Office, Rochester, NY, for United States of America.

Robert W. Wood, Michael Jos. Witmer, Rochester, NY, for Defendants.

## DECISION AND ORDER

ELIZABETH A. WOLFORD, United States District Judge

Over four months after a jury was selected and three months after that jury

convicted defendants Matthew Nix and Earl McCoy (collectively, "Defendants") of all counts in the Third Superseding Indictment, they have filed a motion challenging the jury selection process. Defendants argue that the prospective jurors summoned in their case did not represent a fair cross-section of the community because they included only three African American individuals, only one of whom was qualified to serve as a juror.

Defendants seek the following relief: (1) dismissal of the Third Superseding Indictment on the grounds that the venire from which the trial jury was selected was not a fair cross-section of the community, in violation of the Jury Selection and Service Act of 1968, 28 U.S.C. §§ 1861 *et seq.* ("JSSA") and the Sixth Amendment; and (2) an opportunity to obtain discovery to support the motion. (Dkt. 351).

Because Defendants' motion is both untimely and without a legal basis, the Court denies the motion in its entirety.

## BACKGROUND

Defendants were indicted by a Third Superseding Indictment, returned on January 5, 2017, that alleged violations of the Hobbs Act, 18 U.S.C. § 1951(a), and related firearms and narcotics charges, in connection with a spree of home invasions in 2014. (Dkt. 165). At a proceeding on December 2, 2016, the Court set a trial date of February 3, 2017 (Dkt. 157; Dkt. 158), which was eventually moved to February 13, 2017. (Dkt. 203). Before the trial, the parties engaged in extensive motion practice (*e.g.*, Dkt. 174; Dkt. 175; Dkt. 179; Dkt. 180; Dkt. 183; Dkt. 186; Dkt. 187; Dkt. 191; Dkt. 206; Dkt. 208; Dkt. 214), and, in the weeks leading up to the trial, there were at least six separate court appearances to address trial issues (*see* Dkt. 177 (1/6/17); Dkt. 189 (1/13/17); Dkt. 192 (1/20/17); Dkt. 203 (1/26/17); Dkt. 230 (2/7/17); Dkt. 298 (2/10/17)). At no time leading up to or at *voir dire* did Defendants raise any challenge concerning the jury selection process utilized to summon prospective jurors.

Jury selection occurred on February 13, 2017. (Dkt. 229). The venire appeared to contain three African American individuals. The Government, through its own investigation, discovered that one of those three individuals had a prior felony conviction and elected to use one of its peremptory challenges to strike that potential juror.[1] Ultimately, the petit jury contained two African American jurors.

On March 17, 2017, after a five-week jury trial, Defendants were convicted of all 12 counts. (Dkt. 265). On April 7, 2017, after the return of the verdict and prior to sentencing, Defendants filed post-trial motions pursuant to Federal Rules of Criminal Procedure 29(c) and 33. (Dkt. 286; Dkt. 289). In those post-trial motions, Defendants argue, *inter alia*, that one of the two African American jurors (Juror No. 3) was ineligible to serve on the jury pursuant to 28 U.S.C. § 1865(b)(5) due to undisclosed felony convictions, and his failure to disclose this information during *voir dire* requires a new trial because of juror bias. The Court held an evidentiary hearing concerning Juror No. 3's qualifications to serve on the jury on June 12 and 14, 2017. (Dkt. 348; Dkt. 353). At the hearing, Juror No. 3 confirmed that he did have prior felony convictions. Defendants' post-verdict motions challenging Juror No. 3's inclusion on the jury remain pending.

---

1. Defendant Nix has challenged the Government's investigation of this prospective juror in a post-trial motion (Dkt. 289 at ¶¶ 102–108), and that issue will be addressed by a separate Decision and Order.

On June 19, 2017, Defendants filed the instant motion. (Dkt. 351). The Government filed a response in opposition to the motion on July 5, 2017. (Dkt. 360). The Court addressed the motion at an appearance on July 6, 2017, at which time it reserved decision. (Dkt. 362).

## DISCUSSION

### I. Defendants' JSSA Challenge is Untimely and Procedurally Defective.

Defendants argue that jury selection in this case did not comply with the JSSA, thereby resulting in an unrepresentative jury. (Dkt. 351 at ¶ 15). The JSSA provides that "all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district ... wherein the court convenes." 28 U.S.C. § 1861. It requires district courts to devise a plan for random jury selection that ensures "the random selection of a fair cross section of the persons residing in the community in the district ... wherein the court convenes." *Id.* § 1863(b)(3).

Section 1867 specifies the procedures for challenging jury selection procedures under the JSSA. *See id.* § 1867. Section 1867(a) governs the timing of such a challenge:

> In criminal cases, before the voir dire examination begins, or within seven days after the defendant discovered or could have discovered, by the exercise of diligence, the grounds therefor, whichever is earlier, the defendant may move to dismiss the indictment or stay the proceedings against him on the ground of

substantial failure to comply with the provisions of this title in selecting the grand or petit jury.

*Id.* § 1867(a). "[T]he statute clearly requires that a challenge ... be made at or before the voir dire." *United States v. Silverman*, 449 F.2d 1341, 1344 (2d Cir. 1971) (citing H.R. Rep. No. 1076, 90th Cong., 2d Sess. (1968), *reprinted in* 1968 U.S.C.C.A.N. 1792, 1805 (hereinafter "H.R. Rep. No. 1076") ("Subsection[ ] (a) ... specif[ies] that challenges must be offered before the voir dire begins.")). Further, a motion raising such a challenge must "contain[ ] a sworn statement of facts which, if true, would constitute a substantial failure to comply with the provisions of" the JSSA. 28 U.S.C. § 1867(d). Under § 1867(e), that procedure is "the exclusive means by which a person accused of a Federal crime ... may challenge any jury on the ground that such jury was not selected in conformity with the provisions of" the JSSA. *Id.* § 1867(e).

■ Defendants' JSSA challenge is both untimely and procedurally defective. Defendants do not address the timeliness of their motion. (*See* Dkt. 351). In this case, jury selection occurred on February 13, 2017. (Dkt. 229). Accordingly, Defendants' challenge was due, at the latest, before the *voir dire* began on that day.[2] *See* § 1867(a) (requiring challenge "before the voir dire examination begins, or within seven days after the defendant discovered or could have discovered, by the exercise of diligence, the grounds therefor, *whichever is earlier*" (emphasis added)); *Silverman*, 449 F.2d at 1344 (explaining a challenge is due at or before the *voir dire*); *see also*

2. The Government appears to misread the statute, arguing that "under the JSSA, the defendants were required to file any motion before February 13, 2017 *or, at the latest, by February 20, 2017.*" (Dkt. 360 at 4 (emphasis added)). A motion filed on February 20, 2017,

would have been too late. Indeed, by the terms of the statute, a motion filed after *voir dire* began on February 13, 2017, is too late because the statute clearly requires that a challenge be made "before the voir dire examination begins." 28 U.S.C. § 1867(a).

*Kingsbury v. United States*, 520 A.2d 686, 689 (D.C. 1987) ("The seven day period in the statute applies only when the defendant knew, or should have known through the exercise of diligence, of the objectionable facts more than seven days *prior* to the voir dire." (quoting H.R. Rep. No. 1076)). Defendants did not object to the composition of the venire until the filing of this motion on June 19, 2017, over four months later. (*See* Dkt. 351). Accordingly, Defendants' objection is untimely under § 1867(a).[3]

■ Not only is Defendants' objection untimely, it is also procedurally defective under § 1867(d). Section 1867(d) requires that the objection be raised in a written motion accompanied by a "sworn statement of facts which, if true, would constitute a substantial failure to comply with the provisions" of the JSSA. No such sworn statement was submitted with Defendants' motion, which contains only their observations of the racial composition of the venire. (*See* Dkt. 351 at ¶¶ 4–9).

Because Defendants' motion to dismiss pursuant to the JSSA is untimely and procedurally defective, it must be denied. *See United States v. Young*, 822 F.2d 1234, 1239 (2d Cir. 1987) (denying challenge to venire under JSSA where it was "neither timely nor in compliance with the requisite procedures set forth in the statute"); *United States v. Jones*, 480 F.2d 1135, 1139 (2d Cir. 1973) (concluding that defendants could not challenge jury panel when they did not file motion with sworn statement of facts as required by § 1867(d)).

## II. Defendants' Constitutional Challenge to the Petit Jury is Waived.

■ Defendants also claim a Sixth Amendment violation. (Dkt. 351 at ¶ 15). The Court finds that, like Defendants' statutory challenge, their constitutional challenge is untimely and, therefore, waived.

Federal Rule of Criminal Procedure 12(b)(3) sets forth "defenses, objections, and requests [that] must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." Fed. R. Crim. P. 12(b)(3).[4] Examples are "defects in instituting the prosecution" and "a defect in the indictment or information." Fed. R. Crim. P. 12(b)(3)(A), (B). Federal Rule of Criminal Procedure 12(c)(3) sets forth the consequences of failing to make a timely motion under Rule 12(b)(3): "If a party does not meet the deadline for making a Rule 12(b)(3) motion, the motion is untimely. But a court may consider the defense, objection, or request if the party shows good cause." Fed. R. Crim. P. 12(c)(3).

Although a constitutional challenge to the petit jury is not expressly listed in Rule 12(b)(3), the Supreme Court has held that the rule applies to such challenges. *Shotwell Mfg. Co. v. United States*, 371

---

3. As mentioned, Defendants do not discuss the timeliness of their motion under the JSSA. (*See* Dkt. 351). To the extent that Defendants may argue that their motion on June 19, 2017, is timely under the JSSA because they did not discover the grounds for the motion until June 12, 2017—the date on which Juror No. 3 testified that he had been convicted of prior felonies (*see id.* at ¶ 7)—that argument is unpersuasive because the JSSA plainly requires that the motion be filed by the *earlier* of two events: (1) "before the voir dire examination begins," or (2) "within seven days after the defendant discovered or could have discovered, by the exercise of diligence, the grounds therefor." 28 U.S.C. § 1867(a); *see, e.g., Silverman*, 449 F.2d at 1344. Clearly, then, the motion was due, at the latest, before *voir dire* began on February 13, 2017.

4. Federal Rule of Criminal Procedure 12(b)(3) was formerly Rule 12(b)(2). *See United States v. Jones*, 533 Fed.Appx. 291, 300 (4th Cir. 2013).

U.S. 341, 362, 83 S.Ct. 448, 9 L.Ed.2d 357 (1963) (citing *Frazier v. United States*, 335 U.S. 497, 503, 69 S.Ct. 201, 93 L.Ed. 187 (1948), for the proposition that "a challenge to the method of selecting the petit jury panel comes too late when not made before trial"). In *Shotwell*, the defendants had filed motions attacking the grand and petit jury arrays more than four years after their trial, and as a result, had "lost the[ ] objections by years of inaction." *Id.* at 361–62, 83 S.Ct. 448. The Supreme Court held that former Rule 12(b)(2)—now Rule 12(b)(3)—applies to an objection to the petit jury array, and, as a result, "a challenge to the method of selecting the petit jury panel comes too late when not made before trial." *Id.* at 362, 83 S.Ct. 448. In rejecting the defendants' argument that they should be relieved of Rule 12's requirements "when public officials violate constitutional rights by actions whose illegality is not readily noticeable by the litigants or their counsel," the Supreme Court reasoned:

> [T]he facts concerning the selection of the grand and petit juries were notorious and available to petitioners in the exercise of due diligence before the trial. The same method of selecting jurors in the district had been followed by the clerk and the jury commissioner for years. Inquiry as to the system employed could have been made at any time.

*Id.* at 363, 83 S.Ct. 448. Thus, *Shotwell* holds that a constitutional challenge to a petit jury must be made by pretrial motion under Rule 12.

At oral argument, the Government questioned whether *Shotwell*'s holding concerning the applicability of Rule 12(b)(3) to challenges to the petit jury is viable given that the case predated the passage of the JSSA in 1968. Further, in opposition to Defendants' motion, the Government cites *Young*, 822 F.2d at 1239, and *United States v. King*, No. 94 CR. 455 (LMM), 1998 WL 28057, at *2–3 (S.D.N.Y. Jan. 27, 1998), for the proposition that an untimely JSSA claim likely does not preclude Defendants from asserting a constitutional claim. (Dkt. 360 at 5). However, neither of those cases casts doubt on *Shotwell*'s holding or addresses the applicability of Rule 12(b)(3) to constitutional challenges to the petit jury. In *Young*, the Second Circuit concluded that an untimely and procedurally defective JSSA challenge "did not preclude [the defendants] from raising a constitutional challenge to the makeup of the venire, based on the sixth amendment." 822 F.2d at 1239. In *King*, a district court in the Southern District of New York, relying on cases including *Young*, concluded that the timeliness requirement of § 1867(a) does not apply to constitutional claims. 1998 WL 28057, at *2. In short, neither *Young* nor *King* addressed whether, post-JSSA, a constitutional challenge to the petit jury must be made pretrial under Rule 12(b)(3).

The Second Circuit has stated that "[a] challenge to the racial composition of a *grand jury* falls within the ambit of Rule 12(b)(2)." *United States v. Tarascio*, 15 F.3d 224, 225 (2d Cir. 1993) (emphasis added). Further, district courts within the Second Circuit have applied Rule 12(b)(3) to challenges to a petit jury. *See Pugliano v. United States*, No. 3:95CV1171 (AHN), H-90-18 (AHN), 3:95CV1330 (AHN), 3:95CV1145 (AHN), 2005 WL 3478360, at *2 (D. Conn. Dec. 19, 2005) ("Challenges to the racial composition of a jury must be made prior to trial. If not, the claim is deemed to be waived, or procedurally defaulted." (citations omitted)); *United States v. Peck*, 829 F.Supp. 555, 557 (D. Conn. 1992) ("Although Rule 12(b)(2) does not expressly apply to petit juries, the rule's requirements were extended to petit juries in *Shotwell* ....").

Other circuits have also held that constitutional challenges to the petit jury may be waived if not made before trial. For example, in *United States v. Jones*, 533 Fed. Appx. 291 (4th Cir. 2013), the Fourth Circuit held that "Federal Rule of Criminal Procedure 12(b)(3)—formerly Rule 12(b)(2)—governs motions raising a Sixth Amendment fair cross-section challenge, and, like JSSA motions, such motions must be filed before trial." *Id.* at 300. The Fourth Circuit further held that "[f]ailure to file the motion before trial amounts to waiver of the fair cross-section claim, but a court may grant relief from that waiver for good cause shown." *Id.* Several other circuits agree. *See United States v. Fantroy*, 146 Fed.Appx. 808, 814 (6th Cir. 2005) ("A fair-cross-section constitutional challenge falls under the ambit of Federal Rule of Criminal Procedure 12(b)(3) and thus must be raised before the start of trial." (citing *United States v. Ovalle*, 136 F.3d 1092, 1107 (6th Cir. 1998)); *United States v. Ballard*, 779 F.2d 287, 295 (5th Cir. 1986) ("Rule 12(b)(2) of the Federal Rules of Criminal Procedure requires that objections to such matters as the grand and petit jury arrays must be raised by motion before trial. Failure to do so constitutes a waiver of the claim."); *Paige v. United States*, 493 F.2d 22, 23 (9th Cir. 1974) ("Rule 12(b)(2) does not mention the petit jury, but the rationale in *Davis* [*v. United States*, 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973)] does. We think that the [Supreme] Court would apply the same rationale to the petit jury."); *Talk v. United States*, 509 F.2d 862, 863 (10th Cir. 1974) ("[T]he proper means by which to raise a challenge to both the grand and petit juries is a pre-trial motion filed pursuant to Rule 12 of the Fed. R. Crim. P. Failure to do so in the absence of exceptional circumstances constitutes a waiver of the right to challenge both the grand jury and the petit jury." (citations omit-

ted)); *see also Moore v. United States*, 432 F.2d 730, 740 (3d Cir. 1970) ("We see no reason why a challenge to the composition of a petit jury panel should not be raised before the jury is sworn. It is a claim which should be made before the trial begins on the merits. It is all the more untimely when, as here, it is first raised long after the trial has been concluded, the verdict of guilty rendered and the jury discharged.").

Based on the authorities cited above, the Court finds that Rule 12(b)(3) plainly governs Defendants' constitutional claim, and, as such, the motion should have been made before trial. *See, e.g., Shotwell*, 371 U.S. at 362–63, 83 S.Ct. 448; *Jones*, 533 Fed.Appx. at 300. Accordingly, Defendants have waived their constitutional challenge to the petit jury. Although this Court may grant relief from that waiver for good cause shown, none has been shown here. Defendants do not address the timeliness of their motion or articulate any reason why they did not, before trial, request the discovery that they now seek regarding jury selection. (*See* Dkt. 351). Accordingly, Defendants' constitutional challenge to the petit jury selection is deemed waived.

### III. Even if Timely Raised, Defendants Fail to Establish a Constitutional Violation.

■ Defendants argue that their venire did not represent a fair cross-section of the community, in violation of the Sixth Amendment, because the venire of 83 prospective jurors contained only three African Americans, and of those three African American prospective jurors, only one was qualified to serve because the other two had prior felony convictions. (Dkt. 351 at ¶¶ 5–8). Even if Defendants had not waived this challenge, the Court finds that Defendants have not established a constitutional violation.

██ The Sixth Amendment guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed. . . . " U.S. Const. amend. VI. However, "[d]efendants are not entitled to a jury of any particular composition." *Taylor v. Louisiana*, 419 U.S. 522, 538, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975). Instead, the constitutional protection focuses on the process of jury selection, not the result of that process:

> [P]etit juries must be drawn from a source fairly representative of the community, [but there is] no requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population; but the jury wheels, pools of names, panels, or venires from which juries are drawn must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof.

*Id.* (citations omitted). Thus, "the Sixth Amendment assures only the opportunity for a representative jury, rather than a representative jury itself, but that opportunity can be imperiled if venires regularly lack even the small numbers of minorities necessary to reflect their proportion of the population." *United States v. Biaggi*, 909 F.2d 662, 678 (2d Cir. 1990); *see Roman v. Abrams*, 822 F.2d 214, 226 (2d Cir. 1987) ("[T]he Sixth Amendment guarantees only the *possibility* of a petit jury reflecting a cross section of the community."); *see also United States v. Jackman*, 46 F.3d 1240, 1244 (2d Cir. 1995) ("[T]he Sixth Amendment guarantees the *opportunity* for a representative jury venire, not a representative venire itself.").

██ The Supreme Court has articulated a three-part test for establishing a *prima facie* violation of the Sixth Amendment's fair cross-section requirement:

> In order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Duren v. Missouri*, 439 U.S. 357, 364, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979).

Defendants have met the first *Duren* prong because the group alleged to be excluded—African Americans—is a distinctive group within the community. *Jackman*, 46 F.3d at 1246 ("There is little question that . . . Blacks . . . are [a] "distinctive" group[ ] in the community for purposes of this test."). Defendants have failed, however, to demonstrate that the representation of African Americans was unfair based on their population in the community, or that the alleged underrepresentation was due to systematic exclusion of African Americans in the jury selection process.

The second *Duren* prong requires Defendants to show that the distinctive group's representation "in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community." *Duren*, 439 U.S. at 364, 99 S.Ct. 664. In this case, Defendants must show that the representation of African Americans in the "relevant jury pool" is not fair and reasonable in relation to the number of African American persons in the community. *See id.* ("Initially, the defendant must demonstrate the percentage of the community

made up of the group alleged to be underrepresented, for this is the conceptual benchmark for the Sixth Amendment fair-cross-section requirement."); *United States v. Rioux*, 97 F.3d 648, 657 (2d Cir. 1996) (as to the unfair underrepresentation prong, comparing the population of the group in the community as a whole to the group's representation in the relevant jury pool, where the "relevant jury pool may be defined by: (1) the master list; (2) the qualified wheel; (3) the venires; or (4) a combination of the three"). This "unfair underrepresentation" prong is generally established through the presentation of statistical evidence. *See Duren*, 439 U.S. at 364–66, 99 S.Ct. 664; *Rioux*, 97 F.3d at 655–56 (holding that unfair representation is shown through "absolute disparity" approach, which "measures the difference between the group's representation in the general population and the group's representation in the qualified wheel" and "[t]he absolute numbers approach[, which] is the average difference in the number of jurors per venire due to the underrepresentation"); *United States v. Barnes*, 520 F.Supp.2d 510, 514 (S.D.N.Y. 2007) ("[T]he absolute disparity approach is the primary approach used in this Circuit.").

■ Here, Defendants have offered no statistical evidence in support of their fair cross-section claim; that is, the record contains no evidence concerning the population of African Americans in the community compared to the relevant jury pool, whether that is "(1) the master list; (2) the qualified wheel; (3) the venires; or (4) a combination of the three." *Rioux*, 97 F.3d at 657. Defendants observe that "[o]nly 1.2% of the venire included qualified African–American prospective jurors" (Dkt. 351 at ¶ 9), but "[t]he composition of a particular venire or even several venires is of little value to this analysis." *United States v. Barlow*, 732 F.Supp.2d 1, 29 & n.25 (E.D.N.Y. 2010) (declining to consider the defendant's venire, standing alone, as the relevant jury pool), *aff'd*, 479 Fed. Appx. 372 (2d Cir. 2012). Thus, Defendants have not satisfied the second *Duren* prong. *See, e.g., United States v. Joyner*, 201 F.3d 61, 75 (2d Cir. 2000) (finding that a defendant failed to establish a *prima facie* violation of the Sixth Amendment's fair cross-section requirement where "he made absolutely no showing that ... the district court's use of voter registration and motor vehicle bureau lists to select the venire results in unfair underrepresentation").

■ Nor have Defendants satisfied the third *Duren* prong. That requires Defendants to show that the underrepresentation of African Americans "is due to systematic exclusion of the group in the jury-selection process." *Duren*, 439 U.S. at 364, 99 S.Ct. 664. In other words, the Defendants must show that "the cause of the underrepresentation was ... inherent in the particular jury-selection process utilized." *Id.* at 366, 99 S.Ct. 664. Defendants have made no such showing. They fail to identify which aspect of the system by which juries are selected in this Court causes the claimed unfair underrepresentation of African Americans. *See Duren*, 439 U.S. at 366, 99 S.Ct. 664 (finding that "statistics and other evidence ... established when in the selection process the systematic exclusion took place," namely, "the jury wheel and the venire stage"). Like their failure to satisfy the unfair underrepresentation prong, Defendants' failure to show systematic exclusion defeats Defendants' fair cross-section claim. *See, e.g., Joyner*, 201 F.3d at 75; *Young*, 822 F.2d at 1240 ("In short, defendants have made no showing that any part of the process of selecting the venire was tainted by discrimination, and have therefore failed to establish a *prima facie* violation of their sixth amendment right to a cross-

sectional jury panel."); *Hayden v. Costello*, No. 9:99-CV-1194, 2007 WL 509566, at \*17 (N.D.N.Y. Feb. 13, 2007) ("Unfortunately for [the defendant], he has made no showing whatsoever that African–Americans were systematically excluded from the jury selection process that created the subject jury pool. That failure of proof prevents [him] from succeeding on his fair cross section claim.").

Even if Defendants had attempted to allege that this Court's jury selection process systematically excludes African Americans, the Court notes that the Jury Plan for the United States District Court for the Western District of New York, adopted pursuant to the JSSA and approved by the Judges of the Western District of New York and the Reviewing Panel of the Judicial Council for the United States Court of Appeals for the Second Circuit, provides for the random selection of names of prospective jurors from voter registration lists, which may be supplemented by "some or all of" certain additional lists.[5] United States District Court, Western District of New York, *Jury Plan*, at 3 (Oct. 2016), www.nywd.uscourts.gov/sites/nywd/files/DistrictPlans_2016% 20Jury% 20Plan% 20–% 20FINAL–Web-Version.pdf. The lists are merged to create a "combined source list," from which names are selected at random and placed in a "Master Jury Wheel," one for each jury division in this District. *Id.* at 3–4. The Jury Management System is then used to select names from the Master Jury Wheel of those individuals who are summoned to serve as prospective jurors. *Id.* at 5. This manner of random selection is similar to one that has been upheld by the

Second Circuit in *Young*, 822 F.2d at 1239–40. In that case, the Second Circuit upheld the use of voter registration lists as the source of the names of potential jurors. *Id.* The Second Circuit concluded that:

> [I]t is clear that the jury selection system employed in the Northern District of New York does not result in systematic exclusion of [blacks and hispanics] in the jury-selection process. Venires in the northern district are comprised of voters randomly chosen and placed in a master jury wheel. From this group, a "qualified jury wheel" is created, consisting of those who complete and return qualification forms sent, at random, to the individuals in the master wheel. Finally, from the qualified jury wheel the clerk of the court, again randomly, selects the jury panels to serve at any particular session of the court. Thus, all parts of the process are done by random selection.

*Id.* at 1239 (citation omitted). The jury selection process in this district, like the one reviewed in *Young*, is based on random selection. Accordingly, on the present record, the Court sees no constitutional violation arising out of this Court's jury selection process.

At bottom, Defendants' motion is based solely on their observations of the racial composition of the pool of prospective jurors summoned for their trial. (*See* Dkt. 351 at ¶¶ 3–9). This is insufficient to establish a constitutional violation. It bears repeating that "the Sixth Amendment guarantees only the *possibility* of a petit jury reflecting a cross section of the community." *Roman*, 822 F.2d at 226; *Biaggi*, 909

---

**5.** The voter registration list may be supplemented by "some or all" of the following: (1) DMV records; (2) unemployment insurance benefit records; (3) records from the New York State Office of Temporary & Disability Assistance; and (4) state income tax records.

*See* United States District Court, Western District of New York, *Jury Plan*, at 3 (Oct. 2016), www.nywd.uscourts.gov/sites/nywd/files/DistrictPlans_2016% 20Jury% 20Plan% 20–% 20FINAL–WebVersion.pdf.

F.2d at 678 ("Of course, the Sixth Amendment assures only the *opportunity* for a representative jury, rather than a representative jury itself, but that opportunity can be imperiled if venires regularly lack even the small numbers of minorities necessary to reflect their proportion of the population." (citations omitted)); *Jackman*, 46 F.3d at 1244 ("[T]he Sixth Amendment guarantees the *opportunity* for a representative jury venire, not a representative venire itself."). Defendants have not demonstrated that they were denied an *opportunity* for a representative jury. Accordingly, their fair cross-section challenge fails.

As additional support for their motion, Defendants cite to the recent oral decision by another district judge in this district to strike an entire jury panel in *United States v. Jones*, W.D.N.Y. 1:15–CR–00133 WMS, on the basis that it did not represent a fair cross-section of the community. (Dkt. 360–1 (Tr.)). The 56–person venire in that case appeared to contain no racial minorities, prompting defense counsel to raise a Sixth Amendment fair cross-section challenge before the venire was sworn in. (*Id.* at 3). Describing the venire as "a statistical anomaly" and a "truly rare occurrence," the court in *Jones* granted the motion over the Government's objections as an exercise of "judicial discretion." (*Id.* at 21). The *Jones* court found that as "a matter of fundamental fairness, this venire should be stricken and a new one constituted." (*Id.* at 22).

As an initial matter, the Court finds Defendants' reliance on *Jones* misplaced. The Court does not view the decision in *Jones* as having any binding effect outside of the particular case, parties, and circumstances before that particular court on that particular day. The venire was dismissed in *Jones* in an exercise of that court's discretion on that day, but there was no finding that the jury selection process was unconstitutional or that racial minorities had been systematically excluded from the process. Rather, again, it reflected a discretionary decision on that day by the trial judge handling that particular trial.

However, to the extent that the *Jones* decision could be interpreted as standing for the principle that a Sixth Amendment challenge could succeed based simply on the racial composition of a particular jury venire, this Court declines to follow its approach. *See Hawkins v. Steingut*, 829 F.2d 317, 321 (2d Cir. 1987) ("Although district judges within a particular circuit will frequently find each other's decisions persuasive, they remain free to disagree."). *Duren* and its progeny require much more than racial underrepresentation on a particular venire. *See Duren*, 439 U.S. at 364, 99 S.Ct. 664 (articulating three-prong test for establishing a *prima facie* violation of fair cross-section requirement). Although the Court is sensitive to the concerns of fairness expressed in the *Jones* decision, it is well-settled that "the Sixth Amendment assures only the *opportunity* for a representative jury, rather than a representative jury itself." *Biaggi*, 909 F.2d at 678. Thus, the fact that the venire appeared to contain no minorities in *Jones*—or only three African Americans in the case before this Court—alone is insufficient to establish a constitutional violation. Underrepresentation or no representation of a certain group in a single venire, without more, is not enough. The Sixth Amendment guarantees a fair process—not a particular racial composition of a venire in any individual case.

## IV. Defendants' Belated Request for Discovery is Denied.

Citing to § 1867(f) of the JSSA and *Test v. United States*, 420 U.S. 28, 95 S.Ct. 749, 42 L.Ed.2d 786 (1975), (holding that cer-

440

tain discovery is permitted pursuant to the JSSA), Defendants seek discovery of various information related to the jury selection process. (*See* Dkt. 351 at ¶ 22). In light of the Court's findings concerning the untimeliness of Defendants' claims, the Court denies Defendants' request for discovery. (*Id.* at ¶¶ 16–22). The discovery Defendants seek—such as "demographic information regarding African–Americans for each stage of the jury selection process" (*id.* at ¶ 16), and "data and documents related to excuses, deferrals, or disqualifications as these aspects of a jury system introduce the opportunity for the exercise of discretion" (*id.* at ¶ 19)—was available before trial. *See, e.g., Shotwell*, 371 U.S. at 363, 83 S.Ct. 448 ("[T]he facts concerning the selection of the grand and petit juries were notorious and available to petitioners in the exercise of due diligence before the trial. The same method of selecting jurors in the district had been followed by the clerk and the jury commissioner for years. Inquiry as to the system employed could have been made at any time."). Defendants have not articulated any reason why they have waited until four months after the *voir dire* and after the Court spent time and resources on jury selection and a trial, to seek discovery. Defendants' belated request for discovery is denied.

## CONCLUSION

For the reasons set forth above, the Court denies Defendants' motion (Dkt. 351) in its entirety.

SO ORDERED.

